THE SCHELL CITY BANK, Appellant, v. DAVID REED *et al.*, Respondents.

Kansas City Court of Appeals, May 1, 1893.

1. **Subrogation**: SUBSEQUENT MORTGAGE: RIGHTS OF SURETY. A surety need not pay off a subsequent mortgage in order to be subrogated to the rights of his principal on the debt for which he is surety. On the payment of the debt, the surety stands as against his principal in the shoes of the creditor and has a right to all the securities, and no subsequent deal without his consent can affect his rights which accrued at the time he entered into his obligation of surety. Authorities discussed and distinguished.

2. ————: EQUITABLE ASSIGNMENT: RELATION: SURETY. Payment of the debt operates as an equitable assignment of all securities relating back to the time the surety's obligation was incurred.

3. ————: MORTGAGES: TACKING. The rule of tacking is not recognized in this country and is no longer in vogue in England.

*Appeal from the St. Clair Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*William O. Mead*, for appellant.

(1) The defendant Taylor is not entitled to be subrogated to the rights of Burch, the beneficiary in the deed of trust given by Reed to Burch, now held by plaintiff until he has satisfied all the debts due from Reed to plaintiff, for which the land is mortgaged to secure. 1 Hilliard on Mortgages [2 Ed.] sec. 35, p. 33; Jones

on Mortgages [2 Ed.] sec. 884; 1 Story's Equity Jurisprudence [12 Ed.] sec. 502a; *Wilcox v. Bank*, 7 Allen, 270. (2) The defendant Taylor is not entitled to be subrogated to the mortgage lien of the plaintiff under the mortgage to Burch, for the reason that upon the face of the note he is a joint maker and not a surety, and even though he may be a mere surety he is not entitled to subrogation unless it shall so appear upon the face of the note or mortgage. Sheldon on Subrogation, sec. 129, p. 148; 1 Hilliard on Mortgages [2 Ed.] secs. 42–43, p. 317; *Orvis v. Neville*, 17 Conn. 97. (3) The defendant Taylor's claim to subrogation is through Burch and his assignee, and they had a right to make such disposition of the deed of trust as they saw fit, and Taylor as the surety for Reed cannot justly complain, and cannot be subrogated to any rights under the deed of trust from Reed to Burch. *Stone v. Furber*, 22 Mo. App. 498; *Logan v. Mitchell*, 67 Mo. 524.

*John H. Lucas*, for respondents.

(1) "When a junior incumbrancer redeems from a prior lien, intermediate or subsequent incumbrancers in equity must refund the redemption money or pay all liens anterior to theirs, before they can enforce their claims upon the property." Jones on Mortgages [3 Ed.] sec. 879; 1 Hilliard on Mortgages [3 Ed.] secs. 30–31, 343–4. And the creditor is bound to preserve the security unimpaired. *Leggett v. Humpreys*, 21 How. U. S. 66–80; Brandt on Suretyship & Guaranty, secs. 275, 276, p. 371; *Brown v. Kirk*, 20 Mo. App. 532; *Wolff v. Walter*, 56 Mo. 295; *Orrick v. Durham*, 79 Mo. 174; *Taylor v. Tarr*, 84 Mo. 426; *Reyburn v. Mitchell*, 106 Mo. 380. (2) The English rule (now abandoned) of "Tacking" has never found favor in

America under our registry laws. Jones on Mortgages, secs. 310, 569, 1082. (3) The appellant had constructive and actual notice of the existence of the second mortgage, and respondents' relation thereto, and no equitable principle is known that would justify its contention herein. Brandt on Suretyship & Guaranty, secs. 271–275, *supra*. (4) Appellant's final contention is, that, because Burch assigned to it, Taylor cannot complain, and cites in support of this contention: *Stone v. Furber*, 22 Mo. App. 498; *Logan v. Mitchell*, 17 Mo. 524. We apprehend that the court will experience some difficulty in the application of the above cases to any question in the case at bar. 1 Hilliard on Mortgages [3 Ed.] sec. 31, p. 344; Brandt on Suretyship & Guaranty, sec. 370, p. 498.

ELLISON, J.—The following are the facts over which this litigation has arisen. Defendant Reed gave a first mortgage on his land to St. Clair county to secure a loan of $1,000. He afterwards borrowed $805 of one Burch and gave him a note and second mortgage therefor on the same land, the defendant Taylor also signing as his (Reed's) surety. Afterwards defendant Reed being indebted to one Maus in the sum of $1,200 executed his note and third mortgage on the land to him for that amount. Plaintiff afterwards purchased the Burch note, secured by the second mortgage and by defendant Taylor, and the Maus note secured by the third mortgage. Plaintiff afterwards foreclosed the third mortgage and bid in the land at much less than the note secured thereby. That afterwards in order, as plaintiff states, to protect its title to the land thus acquired, it paid off the judgment which had been obtained foreclosing the first mortgage to St. Clair county.

Plaintiff thereupon began the present suit against Taylor for the amount of the note of $805 secured by the second mortgage, and which, as before stated, had been assigned to plaintiff, and upon which Taylor was surety. Taylor conceded his liability on the note, but claims a right of subrogation and demands to be subrogated to the rights of the mortgagees in the first and second mortgages, that is, the county mortgage and the Burch mortgage securing the note on which he was surety. Taylor offered to pay the debts secured in both these mortgages on being so subrogated. Plaintiff denies this right unless Taylor will also pay the debt in the third mortgage.

The question arising on the foregoing facts is whether a surety must pay off a subsequent mortgage (securing a distinct debt) in order to be subrogated to the rights of his principal on the debt for which he was surety? We think he need not do so. It is a clear principle of equity that a surety has the right of subrogation to all the securities which the creditor has against the principal debtor. *Reyburn v. Mitchell*, 106 Mo. 380; *Taylor v. Tarr*, 84 Mo. 426; *Orrick v. Durham*, 79 Mo. 174. The surety on the payment of the debt stands as against the principal debtor, whose debt he has paid, in the shoes of the creditor and can make available to his benefit all rights which the creditor could have enforced. In this case the creditor held a mortgage. It was a junior mortgage to that held by the county of St. Clair. The creditor's rights in respect to these was a right to redeem the prior county mortgage and to foreclose his own. To these rights the surety succeeded. No *subsequent* deal or manipulation of the securities without the consent of the surety could affect his rights, for such rights of his accrued *at the time* he entered into the obligation of

surety.    All mortgages or other securities held by the
creditor are held by him as a trustee when dealing
with the rights of the surety.    He cannot without the
surety's assent divert the securities to other purposes.
Especially he cannot burden the securities with sub-
sequent debts, for if he could the surety would be
wholly in his power; nor can his assignee, with notice
of the suretyship, do so.    The surety may have entered
into the obligation on the strength of the other secu-
rities held by the creditor.    And whether his rights be
partly contractual or wholly equitable they have been
long recognized and well established.

But we are cited by plaintiff to some authority in
seeming contradiction to what we have said, viz:   1
Hillard on Mortgages [4 Ed.] 342; 1 Jones on Mort-
gages, sec. 834; Sheldon on Subrogation, sec. 148.
Each of these authors, although the law is stated by
them in other parts of their works in conformity to the
principles we have mentioned, yet on the authority of
an English case ( *Williams v. Owens*, 13 Sim. 597) they
state that a mortgagee who also has a surety for the
debt may afterwards make a further advance on the
mortgage to the mortgagor, and the surety cannot be
subrogated to the mortgage without paying both the
original sum and the subsequent advance.    This state-
ment can only be upheld under the rule of tacking, a
rule not recognized here and no longer in vogue in
England.    Such is the view taken by the master of the
rolls in *Drew v. Lockett*, 32 Beav. 499, and by the
supreme court of New York in the case of *National
Exchange Bank v. Silliman*, 65 N. Y. 475, cases wherein
the law is stated in keeping with what we have said in
this opinion.    The master states in *Drew v. Lockett*,
that the surety in the case of *Williams v. Owens*, would
be assumed to have entered upon his suretyship with a
knowledge of the right of the creditor to tack.

This question ought to be clearly determined from a consideration of the time when the sureties' rights accrue. We have stated that the rights of the surety accrue *at the time he enters into the obligation.* And when he pays the debt it operates as an equitable assignment of all securities in the hands of the creditor *relating back to the time his obligation was incurred,* and carrying such securities as may be in the hands of the creditor's assignees, if they had notice of the relations. *McArthur v. Martin,* 23 Minn. 74; *Atwood v. Vincent,* 17 Conn. 575; *Scott v. Timberlake,* 83 N. C. 382; *Drew v. Lockett,* 32 Beav. 499; Sheldon on Subrogation, secs. 87, 100, 102; Harris on Subrogation, secs. 16, 255, 453. And this rule applies where on the face of the papers the surety appears as principal, if in fact a surety, of which fact the assignee has notice. *Rogers v. Trustees,* 46 Ill. 428; Sheldon on Subrogation, sec. 111.

We have discussed the surety's rights with reference to such securities as the creditor took or had at the time the surety entered into his obligation. What rights the surety would have in securities which the creditor might take after the surety entered into his obligation we have not considered. The cases of *Stone v. Furber,* 22 Mo. App. 498, and *Logan v. Mitchell,* 67 Mo. 524, have no application to the facts of this case. Those cases have relation to the equities in favor of the creditor as to securities which have been taken of the principal debtor by the surety. Neither is the case of *Wilcox v. Fairhaven,* 7 Allen, 270, at all applicable to this case. In that case a security was taken by the creditor to secure several debts, some of which were signed by sureties and some not. It was held that the creditor could apply the proceeds of the security (insufficient for all) to the debts which had no sureties, and that the sureties if they wished to be subrogated

to the securities. must pay all the debts which it was given to secure. In such case it is plain that the surety was attempting to rob the creditor of a part of his security. The surety knew when he entered into his obligation that the security taken by the creditor secured *all* the debts, and that the creditor had a right to apply it to any of those debts he chose, if insufficient to pay all.

The result of our conclusion is, that since Burch, the creditor, with the second mortgage securing his debt on which Taylor was surety, had a right to subject the land to the payment of his mortgage debt; and that as holder of such second mortgage he had a right to redeem the first mortgage to St. Clair county, that Taylor, as surety, succeeded to Burch's rights; and that these rights remain unaffected in the hands of the plaintiff as assignee, who took the Burch note with notice of Taylor's suretyship. The judgment will therefore be affirmed. All concur.